**WO**

# IN THE UNITED STATES DISTRICT COURT

# FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| PragmaticPlay International Ltd, | No. CV-23-00497-PHX-DLR |
| Plaintiff, | **ORDER** |
| v. | |
| Agenpragmaticplay.live, et al., | |
| Defendants. | |

Plaintiff PragmaticPlay International Ltd. moves for default judgment against eighty-one Defendant Domain Names (collectively "Defendants"), pursuant to Rule 55(b)(2) of the Federal Rules of Civil Procedure. (Doc. 15). Defendants have not appeared or filed any response. For the reasons discussed below, Plaintiff's motion for default judgment is granted.

## I.   BACKGROUND[1]

Plaintiff is a leading developer and provider of mobile and desktop casino games in the online gaming industry. (Doc. 2 ¶¶ 95–96.) In 2014, Plaintiff acquired the domain name PragmaticPlay.com and began publishing gaming content on its website the following year. (¶ 101.) Since 2016, Plaintiff has been actively developing, offering, and supplying a wide range of games under the PRAGMATIC PLAY mark in numerous jurisdictions. (¶ 96.) Plaintiff uses the PRAGMATIC PLAY mark both in plain text (known as a "word mark")

---

[1] For the purposes of this order, all facts alleged in the Complaint (Doc. 2), except as to damages, are accepted as a true. *Geddes v. United Fin. Grp.*, 559 F.2d 557, 560 (9th Cir. 1977) ("The general rule of law is that upon default the factual allegations of the complaint, except those relating to the amount of damages, will be taken as true.").

and as a stylized form with a design (known as a "composite mark"). (¶ 97.) Plaintiff's games, which are advertised under these marks, are available to U.S. citizens abroad, and a subset of the games are made available by casino operators in select states within the U.S. in accordance with state and federal laws. (¶ 99.) Plaintiff also actively participates in marketing activities, such as year-round PR campaigns, paid and earned content marketing, paid advertising, and social media use—all of which prominently feature the PRAGMATIC PLAY marks. (¶ 100.) Plaintiff alleges that based on its extensive use and promotion of the PRAGMATIC PLAY marks and the recognition and goodwill the marks have achieved among consumers, the marks are distinctive and/or famous and are entitled to broad common law trademark rights. (¶ 104.) Plaintiff also alleges that it has statutory trademark rights based on its registration of such marks with the Patent and Trademark Office. (¶ 106.)

Defendants in this case are eighty-one domain names cybersquatting on Plaintiff's PRAGMATIC PLAY marks. Plaintiff alleges that each of the Defendant Domain Names incorporates the distinctive PRAGMATIC PLAY mark, either as a standalone second-level domain or as a domain with additions, and that such unauthorized use of Plaintiff's marks is a clear attempt to capitalize on Plaintiff's goodwill. (¶¶ 7–87, 107.) Plaintiff further alleges that many of the sites share highly similar content, exploiting Plaintiff's work and composite marks, as well as other copyright-protected graphics from Plaintiff's games. (Doc. 9 at 14–28.)

On March 23, 2023, Plaintiff filed this *in rem* action[2] against Defendants pursuant to the federal Anti-Cybersquatting Consumer Protection Act ("ACPA"), 15 U.S.C. § 1125(d). (Doc. 2 ¶ 1.) The ACPA provides a remedy for cybersquatting when "a person other than the trademark holder registers the domain name of a well known trademark and then attempts to profit from this by . . . using the domain name to divert business from the trademark holder to the domain name holder." *Bosley Med. Inst., Inc. v. Kremer*, 403 F.3d

---

[2] Plaintiff has filed additional actions in other courts. *See e.g., PragmaticPlay Int'l Ltd. v. 789PragmaticPlay.com*, No. 1:23-cv-835 (E.D. Va. July 22, 2022); *PragmaticPlay Int'l Ltd. v. Agen-PragmaticPlay.org*, No. 1:23-cv-174 (E.D. Va. Feb. 7, 2023).

672, 680 (9th Cir. 2005). The ACPA provides that a trademark holder may file an *in rem* action against a domain name if the domain name violates any right of the owner of the mark registered in the Patent or Trademark Office or protected under 15 U.S.C. § 1125(a) or 1125(c). 15 U.S.C. § 1125(d)(2). The action may be filed in the judicial district in which the domain name registrar or domain name registry is located. *Id.* Pursuant to this statute, Plaintiff seeks the transfer of all eighty-one Defendant Domain Names to itself.

On March 24, 2023, Plaintiff served notice of its intent to proceed against Defendants *in rem* through the contact information that registrants of the Defendant Domain Names provided to the domain registrars. (Doc. 9 at 30–37.) Then, on April 4, 2023, Plaintiff filed a motion for an order regarding service, requesting that the Court find service of the Complaint and notice of Plaintiff's intent to proceed *in rem* pursuant to 15 U.S.C. § 1125(d)(2)(ii)(II)(aa), as sufficient to accomplish service. (Doc. 9.) On April 5, 2023, the Court granted that motion and ordered Plaintiff to provide a copy of the Complaint and the Order via mail, email, and electronic portal to the registrants of Defendant Domain Names, if the registrants made such contact information publicly available. (Doc. 10.) On April 18, 2023, Plaintiff filed a declaration describing compliance with this Court's April 5 Order. (Doc. 12.) Defendants were required to answer or otherwise respond by April 26, 2023. No Defendant did so. (Doc. 13.) On May 2, 2023, the Clerk entered default against Defendants. (Doc. 14.) Pending now before the Court is Plaintiff's motion for default judgment. (Doc. 15.)

## II.  LEGAL STANDARD

Federal Rule of Civil Procedure 55(b) provides that a court may grant default judgment following entry of default by the court clerk. Entry of default judgment is left to the trial court's discretion. *Aldabe v. Aldabe*, 616, F.2d 1089, 1092 (9th Cir. 1980). However, before assessing whether default judgment is appropriate, a court must first confirm that is has subject matter jurisdiction over the matter and personal jurisdiction over the parties, as well as ensure the adequacy of service on the defendant. *In re Tuli*, 172 F.3d 707, 712–13 (9th Cir. 1999).

Once these elements are satisfied, a court may consider the following *Eitel* factors in deciding whether to grant default judgment: (1) the possibility of prejudice to the plaintiff; (2) the merits of the claim; (3) the sufficiency of the complaint; (4) the sum of money at stake; (5) the possibility of factual disputes; (6) whether default is due to excusable neglect; and (7) the policy favoring decisions on the merits. *Eitel v. McCool*, 782 F.2d 1470, 1471–72 (9th Cir. 1986). In applying the *Eitel* factors, the Court accepts as true the complaint's well-pled factual allegations, but the plaintiff has the burden of establishing all damages sought in the complaint. *Philip Morris USA Inc. v. Castworld Prod., Inc.*, 219 F.R.D. 495, 498 (C.D. Cal. 2003). A district court is not required to make detailed finding of fact in granting default judgment. *Fair Housing of Marin v. Combs*, 285 F.3d 899, 906 (9th Cir. 2002).

## III.   DISCUSSION

### A. Jurisdiction and Venue

This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1331 because this case involves a federal question arising under the ACPA, 15 U.S.C. § 1121(a). This Court also has *in rem* jurisdiction over Defendants pursuant to 15 U.S.C. § 1125(d)(2). To bring an *in rem* action under the ACPA, a plaintiff must establish two elements: (1) the domain name violates the plaintiff's trademark rights, and (2) the plaintiff is unable to obtain personal jurisdiction over a person who would otherwise have been a defendant in a civil action under the ACPA or, despite due diligence, is unable to find the person would who have been a defendant in such action. 15 U.S.C. § 1125(d)(2)(A). Due diligence requires that a plaintiff (1) send notice of the alleged violation and intent to sue to the registrant of the domain name at the postal and email address provided by the registrant to the registrar, and (2) publish notice of the action as the Court may direct promptly after filing the action. *Id.* § 1125(d)(2)(A)(ii)(II).

The first element for *in rem* jurisdiction is satisfied here because, as detailed below, Plaintiff has common law and statutory trademark rights in the PRAGMATIC PLAY marks, and Defendants violate such rights by unauthorizedly using and profiting from such

marks. (Doc. 2 ¶¶ 104–06.) Plaintiff also has sufficiently alleged the second element for *in rem* jurisdiction by demonstrating that, despite its due diligence, Plaintiff was unable to find a person who could have been a defendant in this case. Plaintiff alleges that all eighty-one Defendants have elected to use a privacy service to entirely conceal their identity—there is either no registrant field in the WhoIs record for each Defendant Domain Name or, where is there is registrant field, that field has been "redacted for privacy." (Doc. 2 ¶¶ 7–87; *see also* Doc. 6 at 1–374.) Plaintiff's allegations are supported both by a declaration and by publicly-accessible records detailing the registrations of each of the eighty-one Defendant Domain Names.[3]

Moreover, Plaintiff has demonstrated its compliance with the due diligence requirements prescribed under 15 U.S.C. § 1125(d)(2)(A)(ii)(II): as directed by this Court's April 5, 2023 order (Doc. 10), Plaintiff served a copy of the Complaint and notice of its intent to proceed *in rem* under the ACPA to Defendant Domain Names' registrants via mail, email, and electronic portal, to the extent registrants made such information available.[4] (Doc. 12.) And where registrants chose to conceal all contact information, Plaintiff provided notice of the action and the intent to proceed *in rem* to the domain registrar themselves. (*See* Doc. 9 at 12.) Defendants were required to answer or otherwise respond to the Complaint by April 26, 2023, but as of yet no Defendant has filed a responsive paper.[5] (*See* Doc. 13, 14.) Thus, the Court finds that Plaintiff has sufficiently

---

[3] Plaintiff provides records from the Arizona Corporations Commission's website and from the Internet Corporation for Assigned Names and Number ("ICANN") database. (*See* Doc. 6 at 1–374.) The Court takes judicial notice of these records. *See SmileDirect Club, LLC v. Berkely*, No. SACV 18-1236-JVS, 2018 WL 8131096, at *4 (C.D. Cal. Oct. 26, 2018) (taking judicial notice of ICANN records); *Poll v. Stryker Sustainability Sols. Inc.*, No. CIV 13-440-TUC-CJK, 2014 WL 199150, at *2 (D. Ariz. Jan. 17, 2014) ("[W]here the authenticity of a website or the accuracy of the information displayed on the website is not disputed, it is appropriate to take judicial notice of information displayed publicly on government websites.").

[4] As to the publication requirement for due diligence, this Court found the method articulated in 15 U.S.C. § 1125(d)(2)(A)(ii)(II)(aa)—requiring Plaintiff to send notice of the alleged violation and intent to sue to the registrants of the various domain names at the postal and email addresses provided to their registrars—to be sufficient notice. (Doc. 10.)

[5] Following counsel's service of case documents, a small number of purported registrants reached out to Plaintiff's counsel via email. Of these purported registrants, only one provided sufficient information to identify the individual registrant with particularity. The registrant, based in Europe, agreed to voluntarily transfer the domain under his control to Plaintiff. On June 8, 2023, per the parties' Stipulation for Entry of Consent Judgment,

1   established that *in rem* jurisdiction is appropriate here. *See Law Offs. of Diana Maier PC*

2   *v. DianaMaierLaw.com*, No. CV-20-02235-PHX-MTL, 2021 WL 3565733, at \*2 (D. Ariz.

3   Aug. 12, 2021) (finding *in rem* jurisdiction where plaintiff took steps to retrieve registrant

4   information from GoDaddy.com, but nevertheless failed to locate a person who could have

5   been a defendant in the action).

6       Venue is also proper in this district. Under the ACPA, an *in rem* action may be filed

7   "against a domain name in the judicial district in which the domain name registrar, domain

8   name registry, or other domain name authority that registered or assigned the domain name

9   is located." 15 U.S.C. § 1125(d)(2)(A). Here, Defendants are all either registered with

10   NameCheap, Inc., GoDaddy.com, LLC, or NameSilo, LLC, or are maintained by the

11   domain registry Registry Services, LLC, all of which are located in Arizona. (*See* Doc. 2

12   ¶¶ 7–87, 92.) Accordingly, venue is proper.

13              **B.  Service of Process**

14       The ACPA provides that satisfying the due diligence requirements outlined in

15   § 1125(d)(2)(A)(ii) constitutes service of process. § 1125(d)(2)(B). As outlined above,

16   Plaintiff satisfied the due diligence requirements by sending a copy of the Complaint and

17   notice of its intent to proceed under the ACPA to Defendant Domain Names' registrants

18   via mail, email, and electronic portal and to the domain registrar themselves if the

19   registrants had concealed all contact information. Accordingly, service has been satisfied.

20              **C.  Joinder of Defendants**

21       Federal Rule of Civil Procedure 20 governs permissive joinder and provides that

22   multiple defendants may be joined in one action if: (1)"any right to relief is asserted against

23   them jointly, severally, or in the alternative with respect to or arising out of the same

24   transaction, occurrence, or series of transactions or occurrences" and (2) "any question of

25   law or fact common to all defendants will arise in the action." Fed. R. Civ. P. 20(a)(2).

26   Both elements of Rule 20 are satisfied here, and so joinder is appropriate.

27

28   this Court entered in favor of Plaintiff on Count I of the Complaint pursuant to 15 U.S.C.
§ 1125(d) as to PragmaticPlay.codes. (*See* Doc. 19.)

First, Plaintiff alleges that Defendants were all registered in the same series of registration transactions occurring within the same general time frame (starting in 2020), to a small set of registrars, using the same method of cybersquatting on the PRAGMATIC PLAY mark, to unidentified and/or foreign registrants, and with many of the websites displaying similar content that misleads visitors into assuming an affiliation between the website and Plaintiff. (Doc. 2 ¶¶ 7–87, Doc. 6 at 1–374.) Based on this, the Court finds that Plaintiff has sufficiently alleged that its right to relief against Defendants arises out of the same series of transactions or occurrences. *See Hysell v. Schwarzenegger*, No. 1:10-cv-01233-AWI-GBC, 2011 WL 2678829, at *14 (E.D. Cal. July 6, 2011) ("The same transaction requirement in Rule 20 refers to similarity in factual background of the claims; claims that arise out of a systematic pattern of events and have a very definite logical relationship arise out of the same transaction and occurrence.") (internal quotation marks omitted). There is also no question that Plaintiff's claims against all eighty-one Defendants involve the same common questions of law and fact: specifically, does Plaintiff have a valid and protectible trademark and, if so, are Defendants unlawfully cybersquatting. As such, Plaintiff also meets the second requirement for Rule 20 joinder.

That said, no court within this district has ruled on the propriety of joining multiple defendant domain names within a single *in rem* action under the ACPA. Nonetheless, the Court is persuaded that the principles underlying permissive joinder support granting it here. *See Desert Empire Bank v. Ins. Co. of N. Am.*, 623 F.2d 1371, 1375 (9th Cir. 1980) (noting that a court must consider prejudice to the parties, delay in litigation, and effect on the court's jurisdiction in determining whether permissive joinder comports with fundamental fairness); *League to Save Lake Tahoe v. Tahoe Reg'l Plan. Agency*, 558 F.2d 914, 917 (9th Cir. 1977) ("We start with the premise that Rule 20 . . . regarding permissive joinder is to be construed liberally in order to promote trial convenience and to expedite the final determination of despute, thereby preventing multiple lawsuits."); *United Mine Workers of Am. v. Gibbs*, 383 U.S. 715, 724 (1966) ("Under the rules, the impulse is toward entertaining the broadest possible scope of action consistent with fairness to the parties;

joinder of claims, parties, and remedies is strongly encouraged."). Here, given Plaintiff's efforts to notify the registrants of Defendant Domain Names of the instant action and registrants' failure to respond, the Court finds that joinder would not cause any prejudice and would serve to expedite, rather than delay, litigation. To add, federal courts in other jurisdictions hearing Plaintiff's sister cases have granted joinder of multiple defendant domain names, relying on similar reasoning. *See e.g.*, *PragmaticPlay Int'l Ltd. v. 789PragmaticPlay.com*, No. 1:23-cv-835 [Doc. 17] (E.D. Va. Dec. 9, 2022) (permitting joinder of 163 defendant domain names pursuant to Rule 20), *report and recommendation adopted*, [Doc. 19] (E.D. Va. Jan. 18, 2023); *PragmaticPlay Int'l Ltd. v. Agen-PragmaticPlay.org*, No. 1:23-cv-174 [Doc. 14] (E.D. Va. Apr. 21, 2023), *report and recommendation adopted*, [Doc. 16] (E.D. Va. July 11, 2023).

The Court is also persuaded that, in the alternative to Rule 20, joinder of Defendants is permissible under Rule 21, which provides that the Court has discretion to *sua sponte* and "on just terms, add or drop a party." Fed. R. Civ. P. 21. The Court finds that joining Defendants here will not result in prejudice and so Rule 21 provides a sufficient alternative basis to join all eighty-one Defendants within this action. *See Coach, Inc. v. 1941 Coachoutletstore.com*, No. 1:11-cv-309, 2012 WL 27918, at *4 (E.D. Va. Jan. 5, 2012) (granting joinder of defendants pursuant to the court's discretion under Federal Rule of Civil Procedure 21); *see also PragmaticPlay Int'l Ltd.*, No. 1:23-cv-835 [Doc. 17] (holding same). Accordingly, Defendants are properly joined.

### D. Default Judgment

For the reasons that follow, the Court finds that Plaintiff is entitled to default judgment against Defendants. Each *Eitel* factor is discussed in turn.

#### i.     First, Fifth, Sixth, and Seventh *Eitel* Factors

Defendants have yet to respond or participate in this litigation, and so the "first, fifth, sixth, and seventh factors are easily addressed." *Zekelman Indus. Inc. v. Marker*, No. CV-19-02109-PHX-DWL, 2020 WL 1495210, at *3 (D. Ariz. Mar. 27, 2020). The first factor—prejudice to the plaintiff—weighs in favor of granting default judgment because

denying Plaintiff's motion for default judgment would leave it "without other recourse for recovery." *PepsiCo, Inc. v. Cal. Sec. Cans.*, 238 F. Supp. 2d 1172, 1177 (C.D. Cal. 2002). Likewise, the fifth and sixth factors—the possibility of factual disputes and whether default is due to excusable neglect—weigh in favor of default judgment because Defendants' failure to participate means there are no disputed material facts nor is there any indication that default is due to excusable neglect. Generally, the seventh *Eitel* factor weighs against granting default judgment because the preferred policy is that cases "should be decided on their merits whenever reasonably possible." *Eitel*, 782 F.2d at 1472. Nonetheless, the existence of Rule 55(b) of the Federal Rule of Civil Procedure, which authorizes default judgment, "indicates that this preference, standing alone, is not dispositive." *Zekelman*, 2020 WL 1495210, at *4 (quoting *PepsiCo*, 238 F. Supp. 2d at 1177). Given that Defendants' failure to respond makes a decision on the merits impossible, the Court finds that seventh factor does not weigh against default judgment. On the whole, the first, fifth, sixth, and seventh *Eitel* factors favor granting default judgment here.

### ii.    Second and Third *Eitel* Factors

The second and third *Eitel* factors, concerning the merits of the claim and the sufficiency of the complaint, are generally analyzed together and "require courts to consider whether a plaintiff has stated a claim on which it may recover." *Vietnam Reform Party v. Viet Tan-Vietnam Reform Party*, 416 F. Supp. 3d 948. 962 (N.D. Cal. 2019). As such, the Court turns to Plaintiff's ACPA claims.

To establish an ACPA violation, a plaintiff must first establish that it is the owner of a mark registered with the Patent and Trademark Office (PTO) or protected under 15 U.S.C. § 1125(a) or 1125(c). *See* 15 U.S.C. § 1125(2)(d). Next, a plaintiff must show (1) the registration, use, or trafficking in, a domain name (2) that is identical or confusingly similar to a distinctive or famous trademark (3) with a bad intent to profit from the mark. *Id.* § 1125(d)(1)(A). Although the ACPA provides nine exclusive factors a court may consider in determining whether a registrant had a bad faith intent to profit from a plaintiff's mark, "[c]ourts need not . . . march through the nine factors seriatim because the

listed criteria are permissive and the ACPA allows for consideration of the unique circumstances of the case." *beIN Media Grp. LLC v. bein.ae*, No. 3:18-cv-1042-CAB, 2019 WL 1129153, at *4 (S.D. Cal. Mar. 11, 2019) (citing *Lahoti v. Vericheck, Inc.*, 586 F.3d 1190, 1202 (9th Cir. 2009)). For the following reasons, the Court finds that Plaintiff has sufficiently established its ACPA claims.

First, Plaintiff alleged and established that it holds U.S. trademark registrations for both the PRAGMATIC PLAY word mark (Reg. No. 6,848,492) and composite mark (Reg. No. 6,890,979), both directed to "[e]ntertainment services, namely, providing games of chance via the Internet." (Doc. 6 at 376–79.) Plaintiff has provided copies of the PTO certificates of registration for both marks. (*Id.*) "Registration of a trademark with the PTO is prima facie evidence that the mark is distinctive and enforceable." *beIN*, 2019 WL 1129153, at *4 (citing *Lahoti*, 586 F.3d at 1199); *see also* 15 U.S.C. § 1057(b) ("A certificate of registration of a mark . . . shall be prima facie evidence of the validity of the registered mark and of the registration of the mark, of the owner's ownership of the mark, and of the owner's exclusive right to use the registered mark in commerce.").

Granted, Plaintiff did not file its trademark registrations until February 2021, and yet its ACPA claims allege cybersquatting beginning in 2020. To address this, Plaintiff contends that its marks are entitled to common law trademark rights based on Plaintiff's consistent and continuous use of such marks in commerce since 2015. (Doc. 15 at 11.) To establish enforceable common law trademark rights within a geographical area, a plaintiff must prove that (1) it was the first to use a mark, and (2) it has established legally sufficient market penetration. *Optimal Pets, Inc. v. Nutri-Vet, LLC*, 877 F. Supp. 2d 953, 959 (C.D. Cal. 2012). Additionally, a plaintiff must show continuing use of the mark—that is, use without interruption. *Casual Corner Assocs., Inc. v. Casual Stores of Nev., Inc.*, 493 F.2d 709, 712 (9th Cir. 1974). Here, taking the Complaint's factual allegations as true, Plaintiff has used its PRAGMATIC PLAY word mark as part of its domain name since 2015 and has actively marketed its online goods and services under both the word and composite marks since 2016. (Doc. 2 ¶¶ 100–02.) Plaintiff's continual marketing of its games and

services using such marks has lead to significant consumer and industry recognition. (*Id.*) This is sufficient to show that Plaintiff has common law trademark rights in the PRAGMATIC PLAY marks predating its 2021 PTO registrations. *See Law Offs. of Diana Maier PC*, 2021 WL 3565733, at *4 (finding that continually using a mark in a domain name and in connection with promotional material and advertisements was sufficient to establish common law trademark rights).

Second, Defendants are all domains names that are confusingly similar to Plaintiff's trademarks under 15 U.S.C. § 1125(d)(1)(A)(ii)(I). Each of the Defendant Domain Names incorporates the PRAGMATIC PLAY mark. (Doc. 2 ¶¶ 7–87.) Some Defendants also incorporate slight differences: some include random elements in their name (*e.g.*, "123"); some include the addition of a top level domain suffix (*e.g.*, ".pro" or ".cfd" instead of ".com"); and some add a descriptive element (*e.g.*, "demo" or "game"). Given that these differences are all minor and do not serve to distinguish Defendant Domain Names from Plaintiff's mark, the Court finds that Plaintiff has proven the "confusingly similar" element of its ACPA claims. *See beIN*, 2019 WL 1129153, at *5 (finding that despite slight differences, defendants domain names were confusingly similar to plaintiff's mark) (citing *Coca-Cola Co v. Purdy*, 382 F.3d 774, 782 (8th Cir. 2004) (holding same)).

Third, several of the ACPA's nonexclusive factors to consider in determining bad faith weigh in favor of finding bad faith here. First, Defendant Domain Names do not reflect the legal names of their registrants. 15 U.S.C. § 1125(d)(1)(B)(i)(II). Second, the registrants are not using the Defendant Domain Names for bona fide offerings of goods or services, given that many of these websites display Plaintiff's intellectual property without authorization. *Id.* § 1125(d)(1)(B)(i)(III). Third, there is also no evidence of registrants' bona fide noncommercial use of Defendant Domain Names given the clear commercial nature of such websites. *Id.* § 1125(d)(1)(B)(i)(IV). Fourth, registrants appear to intend to divert consumers from Plaintiff's site to their own, given the strikingly similarities in domain names and website content. *Id.* § 1125(d)(1)(B)(i)(V). Moreover, this diversion creates the likelihood of confusion as to the source or affiliation of the site, thereby

presenting a harm to the goodwill of Plaintiff's mark. *Id.* Given these factors, the Court finds that Plaintiff has satisfied its burden to allege a cybersquatting claim against Defendants. In turn, the second and third *Eitel* factors weigh in favor of granting default judgment.

### iii.    Fourth *Eitel* Factor

The final factor for the Court's consideration is the amount of money at stake in relation to the seriousness of the defendant's conduct. Generally, if the sum of money at stake is disproportional or inappropriate, default judgment is disfavored. *See Twentieth Century Fox Film Corp. v. Streeter*, 438 F. Supp. 2d 1065, 1071 (D. Ariz. 2006). However, Plaintiff seeks no monetary damages or fees here, but rather asks that Defendant Domain Names be transferred to Plaintiff. Thus, the fourth factor also weighs in favor of granting default judgment. *See Law Offs. of Diana Maier PC*, 2021 WL 3565733, at *4 (finding that seeking transfer of domain name, rather than monetary damages, weighs in favor of default judgment).

### E.  Conclusion

To summarize, nearly all of the *Eitel* factors weigh in favor of granting default judgment. Default judgment therefore shall be entered in favor of Plaintiff and against each of the Defendant Domain Names. As relief, Plaintiff seeks the transfer of Defendant Domain Names to itself. Under 15 U.S.C. § 1125(d)(1)(C), "a court may order . . . the transfer of the domain name to the owner of the mark." Given that Plaintiff has established its ACPA claims against Defendants, the Court grants Plaintiff's requested relief. Accordingly,

**IT IS ORDERED** that Plaintiff's Motion for Default Judgment (Doc. 15) is **GRANTED**.

**IT IS FURTHER ORDERED** that Registry Services LLC shall change the registrars of record for all Defendant Domain Names within its control to Plaintiff's domain name registrar of choice, SafeNames Ltd.

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

**IT IS FURTHER ORDERED** that the registrars SafeNames Ltd., NameSilo, LLC, GoDaddy.com LLC, and NameCheap, Inc. shall take all necessary steps to have Plaintiff PragmaticPlay International Ltd. listed as the registrant for the Defendant Domain Names.

The Clerk of the Court shall enter judgment accordingly and terminate this case.

Dated this 10th day of January, 2024.


_____
Douglas L. Rayes
United States District Judge